[No. 2,991.]

## WELLS, FARGO & CO. *v.* PACIFIC INSURANCE COMPANY.

INTERPRETATION OF INSURANCE POLICIES.—Policies of insurance are written contracts, to be interpreted by the same rules which apply to other contracts, and to be enforced according to the intention of the parties.

IDEM.—Policies of insurance are to be construed liberally in favor of the assured.

INSURANCE OF TREASURE SHIPPED IN VESSELS.—When an express company which is engaged in transporting bullion and treasure for hire on vessels, as a common carrier, insures such bullion and treasure, and the policy given by the insurance company provides that the express company is

insured upon treasure and bullion to be laden at the ports (naming them), and that the adventure upon such bullion and treasure shall begin from and immediately following the loading thereof on the vessels at the ports named, the clause which provides where the adventure shall begin is not to be construed as a warranty, but as a mere recital of the expectation that the treasure insured was to be shipped from the designated ports.

IDEM.—The risk in such policy commences when bullion or treasure in on board the vessel, in the hands of the messenger of the assured at one of the ports named, even if it was not taken on board at one of the ports named, but at some other place in the course of the voyage, or was handed to the messenger by a passenger, away from one of the ports named.

IDEM.—When such policy contained a clause that the agent of the express company should forward to his principal, advices of the amount of each shipment of bullion and treasure, and that the risks should be reported to the insurance company for indorsement on the policy as soon as known to the assured, it became the duty of the assured to report to the insurance company the amount of a shipment as soon as it was known, no matter from what source the information was obtained; but the forwarding of advices by the agent of the assured, of the amount and place of a shipment, was not indispensable to the right of the assured, to demand an indorsement of the risk on the policy and to recover payment in case of loss.

IDEM.—The fact that, under such circumstances, a loss occurs and becomes known to the assured before it is reported to the insurance company for indorsement on the policy, does not release the insurer from his obligation to make it good, provided it is reported as soon as known to the assured.

APPEAL from the District Court of the Fourth Judicial District, City and County of San Francisco.

The Court below rendered judgment for the defendant. The plaintiff appealed.

The other facts are stated in the opinion.

*C. R. Greathouse,* for Appellant.

The policy was what is commonly known as a running policy. It was undoubtedly the intention of Wells, Fargo & Co. to insure under this policy the ten thousand dollars. By mistake, the agent only sent at first written advice for six thousand one hundred and fifty-eight dollars, instead of sixteen thousand one hundred and fifty-eight — real amount shipped, and intended to be insured. The good faith of all parties is unquestioned. The mistake in no

way contributed to the loss.   In the absence of fraud, such mistakes made by either party, whether in the application policy, declaration of interest, indorsement, or in any other way, may and should be corrected.   (*Ruan* v. *Gardner*, 1 Wash. Cir. C. R. 150; *Robinson* v. *Touray*, 3 Camp. 158; 1 Phillips on Insurance, p. 77, Sec. 117; *Motteux* v. *London Assurance Co.*, 1 Ark. 545; *Hogan* v. *Del. Ins. Co.*, 1 Wash. C. C. R. 419; *Norris et al.* v. *Ins. Co. of North America*, 3 Yeates, Penn. 91; *Bell* v. *The Western Marine and Fire Ins. Co.*, 5 Robinson R., La. 443; *Woodruff* v. *Columbus Ins. Co.*, 5 La. An. R. 698.)

The written advice was given by the agent within a reasonable time after the shipment, in which the ten thousand dollars is included.   The policy does not require advices to be forwarded with the treasure, or at the same time; it only says " that the agent of Wells, Fargo & Co. shall forward to the San Francisco office of Wells, Fargo & Co. advices of the amount of each shipment."   For all purposes it was perhaps best that advices should be sent with the shipment; but it certainly was not so stipulated.   The insurance company wrote the policy, and it was within their power to insert such a provision, if they desired Wells, Fargo & Co. to be bound by it.

It is well settled that policies are to be construed very liberally in favor of the insured.   In this case, where there was no fraud, and where the insurers were in no way prejudiced by the delay, the policy ought not to be so strongly construed against the insured as to hold that the omission of Childress to do what it did not, either in terms or by implication stipulate he should do, was fatal to the risk. (*Rohler* v. *The Great Western Ins. Co.*, 3 Keyes, 17; *Pelley* v. *Royal Exchange Assurance*, 1 Burr. 349; *Parkhurst* v. *Gloucester Mutual Fishing Ins. Co.*, 100 Mass. 301, and cases there cited.)

Advice and full particulars of the facts with regard to this

shipment was given at the earliest day possible to the San Francisco office of Wells, Fargo & Co. by its duly authorized messenger and agent in person, and this was immediately communicated to the insurance company. But even if these points are held not well taken, the risk was saved, and the respondent is liable, by virtue of a memorandum or clause written upon the marginal face of the policy.

It will be noticed that there are two kinds of insurance under the contract. One is made in the body of the policy upon "treasure, bullion, or bonds laden, or to be laden," etc. Under this Wells, Fargo & Co. could have advised, and had indorsed on the policy all treasure, bullion, or bonds shipped without reference to whether it was insured by them or not to the owners. As common carriers they had an insurable interest in the property to the full amount of the shipment. But in addition to this, the parties provided for another species of insurance, by placing upon the right hand margin of the policy the following written clause: "This underwriting to cover treasure and bullion, shipped by Wells, Fargo & Co.'s Express, and at their risk, by reason of their assuming the responsibility of insurance thereon." By this they specially agreed that all treasure and bullion (bonds being omitted), the safe carriage of which was insured to the owners by Wells, Fargo & Co., should become insured by respondent, and be entitled to indorsement on the policy. In other words, the insurance company undertook to reinsure Wells, Fargo & Co. on treasure and bullion.

The risk did not take effect by reason of any advice, but it attached, and the insurance company became entitled to the premium when Wells, Fargo & Co. assumed the responsibility of insuring to the owners the safe carriage of the treasure or bullion. The advice, if one was necessary in such cases, was not a condition precedent. This construction must be adopted, if we give any effect to the clause.

It is well settled that written conditions or clauses are en-

titled to the fullest force, and even control such parts of the policy as are repugnant to it.

In the case in point, Wells, Fargo & Co. insured to the owners the ten thousand dollars against perils of the sea. This risk was covered by the underwriting, and they became responsible to the insurance company for the proper premium, which could have been collected from them, whether the treasure was lost or not. (*Savage* v. *Corn Ins. Co.*, 36 N. Y. R. 655; *Woodruff* v. *Columbus Ins. Co.*, 5 La. An. R. 698; *Hewes* v. *Union Ins. Co.*, 16 La. An. R. 235.)

*S. M. Wilson*, for Respondent.

In every contract of insurance the property must be described with reasonable certainty. This is essential to the validity of the contract; and in applying it to particular property, reference must be had to its terms, and the property must be distinctly identified as answering to the description given. (2 Parsons on Maritime Law, 197–199, and notes.)

In the case at bar the policy is precise and definite as to the property intended to be insured. It provides for an insurance in "the various sums to be indorsed" thereon, at and from the ports and places therein mentioned, on treasure, bullion, and bonds laden or to be laden on board of steamships, steam vessels, or propellers; and for greater certainty it proceeds as follows: "Beginning the adventures upon the said treasure, bullion, and bonds from and immediately following the loading thereof on board the said vessel at ports and places aforesaid, and so shall continue and endure until the said treasure, bullion, and bonds shall be safely landed at ports and places aforesaid." This clause seems to have been inserted *ex industria*, as a precautionary provision against any misunderstanding as to the property intended, or the

extent of the risk.   The commencement of the risk is made to depend on the loading of the property at one of the points designated; and in order to construe the policy as attaching to property not so loaded, its terms must be disregarded.

This view of the policy is further maintained by the provision requiring the agent of the appellant to forward "advices of the amount of each shipment."   Taking this provision in connection with the language in the previous part of the policy, it is evident that the advices are to be forwarded by the agent at a port or place referred to as a point of shipment; and the natural inference is that the agent intended by the parties is the person who makes the shipment, and is acquainted with the facts.   The object of the provision is to enable the respondent to obtain reliable information as to the premiums to which it may be entitled, and the extent of its liability in case of loss; and it would be unreasonable to construe the provision as including every person who may happen to be in the employment of the appellant as an agent.   The only other construction is the one we have suggested, and this construction is necessary to render the provision of any benefit as a protection against fraud.   We do not intimate that there was danger of fraud in the present case, but the respondent intended to protect itself as far as possible from such a danger, and this circumstance is important in construing the policy.   It is true, in policies of this character great confidence is necessarily reposed in the assured; but this is a strong reason why provisions inserted for the protection of the insurer should not be frittered away by interpretation.   But the question involved has been determined in numerous cases.   (*Murray* v. *The Columbian Insurance Company*, 11 Johns. 301; *Graves* v. *The Marine Insurance Company*, 2 Caines, 339; *Richards* v. *The Marine Insurance Company*, 3 Johns. 306; *Murray* v. *The Columbian Insurance Company*, 4 Johns. 442; *Robinson* v. *French*, 4 East, 130; *Hodgson* v. *Richardson*, 1 Wm. Bl.

463; *Horncyer* v. *Lushington,* 15 East, 46; *Rickman* v. *Carstairs,* 5 B. & Ad. 650.)

In addition to this, the amount of the shipment was not communicated to the respondent, nor the indorsement demanded until notice had been received of the loss; it was then too late. (*Edwards* v. *The St. Louis Perpetual Ins. Co.,* 7 Mo. 382; *Douville* v. *The Sun Mutual Ins. Co. of New York,* 12 La. An. 259; *Schaefer* v. *Baltimore Mar. Ins. Co.,* 33 Md.)


By the Court, CROCKETT, J.:

This action is founded on an open or running marine policy of insurance, whereby the defendant agreed to insure the plaintiffs in the various sums to be indorsed on the policy, upon treasure, bullion, and bonds laden or to be laden on seaworthy steamships, steam vessels, or propellers, "at and from Victoria (B. C.), Portland (O.), Astoria (O.), Los Angeles (Cal.), La Paz, Mazatlan, and Guaymas (Mexico), to San Francisco, or vice versa, San Francisco to either of the before-mentioned ports or places   *   *   *   beginning the adventure upon the said treasure, bullion, and bonds from and immediately following the loading thereof on board the said vessels at ports and places aforesaid, and so shall continue until the said treasure, bullion, and bonds shall be safely landed at ports and places aforesaid;   *   *   *   in all cases the agent of Wells, Fargo & Co. to forward to the San Francisco office of Wells, Fargo & Co. advices of the amount of each shipment." On the left hand margin of the policy is a memorandum, which need not be recited, except one clause thereof, in these words: "Risks applicable hereto to be reported to this company for indorsement on the policy as soon as known to the assured." On the right hand margin is a memorandum in these words: "This underwriting to cover treasure and bullion shipped by Wells, Fargo & Co.'s

Express and at their risk, by reason of their assuming the responsibility of insurance thereon." These are the only provisions of the policy affecting the present controversy. It appears from the agreed statement of facts that it was the usual custom and course of business between these parties for the local agents of the plaintiffs at the ports of shipment to forward by each steamer on which a shipment was made, to the San Francisco office of the plaintiffs, advices of each shipment, on the receipt of which the plaintiffs sent said advices to the defendant, and the proper indorsements were then made on the policy, in accordance with the advices; that the steamer on which the shipment was made, being the ordinary and most expeditious means of communication between said ports, the advices were necessarily received and indorsements made after the safe arrival (or loss) of the treasure; that the premiums were paid by the plaintiffs after the indorsements, upon monthly statements made up and presented by the defendant. It further appears that in September, 1870, the steamer Continental left Guaymas in a seaworthy condition, for San Francisco, and in the due course of her voyage touched at Mazatlan, where she received and discharged freight and passengers; after which she resumed her voyage, and within a few days thereafter, whilst in the due course of her voyage, was wrecked by perils of the sea, and became, with her cargo, including the treasure hereafter to be mentioned, a total loss; that at Guaymas and Mazatlan the agents of the plaintiffs received for them from various shippers money and treasure to be carried to San Francisco, which were shipped on the Continental, accompanied with advices in the usual form from the local agents, which advices were lost with the vessel. But duplicate advices were forwarded by the succeeding steamer, and on being received by the plaintiffs were sent to the defendant, and the indorsements made on the policy in accordance therewith. The advices sent from

the agent at Mazatlan notified the plaintiffs of a shipment of treasure by the Continental to the amount of six thousand one hundred and fifty-eight dollars only; which sum was duly indorsed on the policy.    But it appears from the agreed statement that while the vessel was en route from Guaymas to Mazatlan, one Smith, a messenger for the plaintiffs, and in the due course of his business and employment as such, received from passengers on board the sum of seven thousand three hundred and forty-two dollars and fifty cents, to be by the plaintiffs, as an express company, carried to San Francisco, " and for which—being duly authorized so to do— he had given to divers shippers receipts in which the safe carriage of said treasure was insured against all peril;" that said messenger had said treasure in his possession on board said steamer during the time she was lying at Mazatlan; and whilst lying at said port other treasure was brought on board by other shippers, and delivered to and received by said messenger to the amount of two thousand six hundred and fifty-seven dollars and fifty cents, to be in like manner transported to San Francisco, and for which he gave similar receipts; that whilst at Mazatlan, with all of said treasure in his possession as messenger on board said steamer, he notified the local agent at that place of his receipt and possession of these sums, amounting in the aggregate to ten thousand dollars, in order that the local agent might embrace that amount in his letter of advice to be sent to the plaintiffs by that steamer; but the local agent forgot and omitted to do so, and included in his letter of advice only the six thousand one hundred and fifty-eight dollars shipped by himself.    It further appears that the ten thousand dollars was lost with the steamer, and the plaintiffs have paid to the several shippers the full amount thereof.    But the messenger escaped from the wreck, and on his arrival at San Francisco the plaintiffs ascertained from him the foregoing facts in respect to the ten thousand dollars; and thereupon,

on delivering to the defendant the duplicate letters of advice above mentioned, verbally notified the defendant of said facts, and that they had learned the same from Smith, and requested that the ten thousand dollars be indorsed on the policy, which request was refused. Subsequently the plaintiffs procured from their local agent at Mazatlan a corrected letter of advice, bearing date as of the day of the shipment on the Continental, and which included the ten thousand dollars; and after serving this on the defendant, again requested that this sum be indorsed on the policy, which request was again refused. This action is brought to enforce payment of the ten thousand dollars, and the only question for consideration is, whether on these facts the defendant is liable on the policy.

The principal points relied upon by the defense are: First—That by the terms of the policy the defendant is not liable for treasure or bullion except "from and immediately following the loading thereof on board the said vessel" at one of the enumerated ports; and it is claimed that this treasure was not loaded on the Continental, in the sense of the policy, at either of the said ports. Second—That one of the conditions of the policy is, that "in all cases the agent of Wells, Fargo & Co. shall forward to the San Francisco office of Wells, Fargo & Co. advices of the amount of each shipment;" and it is insisted that this condition was not complied with in respect to the ten thousand dollars. The argument is that this provision has the force and effect of an express warranty on the part of the assured, and that without a performance of it the liability of the defendant under the policy never attached.

In construing policies of insurance, Courts are governed by the same general rules which are applicable to other instruments, and effect is to be given to the intention of the parties, to be ascertained by the same method which is employed in the interpretation of other written contracts. Not-

withstanding the numerous technical phrases which are usually inserted in policies, and the peculiar language in which they are generally couched, they are, after all, only written contracts, to be interpreted by the same rules which apply to other contracts, and to be enforced according to the intention of the parties. Applying these rules to this policy, the first inquiry is, what was intended by the provision that the adventure was to begin from and immediately after the " loading " of the treasure on board the vessel at one of. the enumerated ports?   In order to comply with this condition, was it essential that the treasure should have been actually placed on board at one of these ports, or was it sufficient that it was already on board when the vessel arrived in port, and continued on board until she departed on her voyage? Similar clauses are generally inserted in marine policies, and have been frequently considered by the Courts.   In *Murray* v. *The Columbian Insurance Company*, 11 John. 301, the policy was " at and from Cagliari to St. Petersburg   *   *   * upon all kinds of goods and merchandise laden or to be laden on board the good American ship Rolla, beginning the adventure upon the said goods and merchandise from and immediately following the loading thereof on board the said vessel at Cagliari."   It appeared that on arriving at Cagliari the vessel had still on board a portion of the outward cargo, and also merchandise put on board at Messina.   On her arrival at Cagliari the cargo was hoisted out of the hold and restowed, but no new cargo was taken on board except a quantity of salt.   The Court held that the policy did not attach to any portion of the cargo except the salt taken on board at Cagliari.   In its opinion, the Court says it has " been solemnly determined, on different occasions, by this Court, as well as the Courts of England, that in policies like the present the insurance attaches only on the cargo taken on board at the port where the venture is to begin."

In commenting on this case, Phillips, in his Treatise on

Insurance, says: "But if, in this case, the goods had been landed upon a wharf, and then taken on board again, there seems to be no ground to doubt of this being a 'loading' within the terms of the policy." (Sec. 939.) Some of the English cases also hold that a partial unloading of the cargo, and then putting it on board again, will not constitute a "loading" at the port of departure on the voyage covered by the policy. (*Spitta* v. *Woodman*, 2 Taunt. 416; 16 East. 188, n.) In another case of a similar character, and which was decided in the same way, the Court puts its decision partly on the ground that a partial unloading and reloading of the cargo, at the port of departure on the voyage insured against, is not a "loading" at that port within the terms of the policy, because it could not be known whether the goods had been damaged on their previous transit, before the commencement of the risk insured against. (*Homeyer* v. *Lushington*, 15 East. 46.) But in a later case, where enough of the cargo had been unloaded to enable the Custom House officers to examine the whole, and it was then again placed on board, Lord Ellenborough held this to be a "loading" at that port, within the policy. He said: "The period of time from which the responsibility of the underwriter is to commence as to goods, and to which the policy refers for that purpose, is as well fixed by this partial unloading and reloading at Landscrona, as by a more perfect and entire reshipment there; it is sufficient for supplying a date, which is the only object of the reference in question." (*Nonnen* v. *Reid*, 16 East. 176.) In commenting on this rule, in *Bell* v. *Harpson*, 16 East. 240, the same eminent Judge said that "a very strict, and certainly a construction not to be favored, and still less to be extended, was adopted in *Spitta* v. *Woodman*. If there be anything to indicate that a prior loading was contemplated by the parties, it will release the case from that strict construction." In *Richardson* v. *Carstain*, 5 B. & Ad. 650, the rule we are commenting upon is ad-

verted to " as strict and to be relaxed when there is any-
thing in the policy to satisfy the Court that the policy was
intended to cover goods previously on board." The same
proposition, substantially, is announced in *Robinson* v. *French*,
4 East. 140.

After summing up all the decisions on this point the result
is thus stated in Phillips on Insurance (Sec. 939): "From all
these cases it is not easy to determine the construction of a
policy, in which the risk is to commence on the loading of
the goods at a port named. If it be considered a warranty
that the goods shall be loaded at such port, the Courts seem,
in some of the above cases, to have departed from the usual
construction of express warranties. But if these words are
to be considered as merely description, having at most the
force of a representation, they will not affect the contract if
the policy provides any other way of ascertaining the time
when the risk commences. These discrepant decisions cer-
tainly do not coincide in support of any general proposition.
That to which they seem to be the nearest approximation,
and which may be adopted without a departure from any
general principle, is, that this specification of the terminus
*a quo*, unless it appear by the policy to be intended as a war-
ranty of the loading at the designated place, is to be taken
as mere recital, description, or intention, or expectation,
being at most an implied representation of the loading, and
is to be construed accordingly." The author further adds:
"There is no need of resorting to the doctrine of warranty
to provide for the case of aggravation of the risk by reason
of the cargo not being put on board at the place named,
which is mentioned in some cases, since that comes appro-
priately within the doctrine of representation and conceal-
ment." Testing the policy under consideration by these
rules, we think the clause which provides that the adventure

is to begin "from and immediately following the loading" of the treasure on board at one of the enumerated ports is not to be construed as a warranty, but, in the language of Mr. Phillips, "as mere recital, description, or intention, or expectation" that the treasure was to be shipped from the enumerated ports. We arrive at this conclusion from the policy itself and from the agreed statement of facts. It was known to the defendant that the plaintiffs were engaged in the business of common carriers of treasure by their express between San Francisco and Guaymas and the intermediate ports; and the agreed facts leave little room for doubt that it was also aware that the treasure, whilst on board, was to be in the care and custody of the plaintiff's messenger, who was authorized to receive treasure for transportation from passengers on board, en route between San Francisco and the enumerated ports. But leaving this fact out of view, enough appears on the face of the policy to indicate clearly that the "loading" in a strict sense at one of the specified ports was not intended as a warranty. From the very nature of the transactions to which the policy relates it cannot be reasonably inferred that if treasure was received on board at some other place than one of those designated, and was carried on the vessel, in the custody of the messenger, into one of the specified ports, en route for San Francisco, the policy was not intended then to attach, unless the treasure was put over the vessel's side and again placed on board. It cannot be denied that if this had been done at Mazatlan, with the treasure received by the messenger, it would have been a "loading" at that port, within the very letter of the policy. But the parties contemplated no such idle and useless act as a condition on which the risk was to commence. We have not the least doubt that the risk was intended to commence when the treasure was actually on board at one of the specified ports, in the possession of the plaintiff's messenger for transportation, whether it was first taken on board at that

port or at some other place in the course of the voyage. The rule of law is that policies are to be construed liberally in favor of the assured. (*Rolker* v. *Great Western Ins. Co.*, 3 Keys, 23.) But to hold that this treasure was not "loaded" on board at Mazatlan in the sense of the policy, would be to sacrifice the substance to the shadow and to defeat the rights of the assured by a strict and over-technical construction at variance with the plain intention of the parties, to be deduced from the nature of the transactions to which the policy relates.

In considering the second point made by the defendant, it will be necessary to construe, in connection with other provisions of the policy, the clause which requires "in all cases the agent of Wells, Fargo & Co. to forward to the San Francisco office of Wells, Fargo & Co. advices of the amount of such shipment." The policy does not require these advices to be forwarded, nor in any manner delivered to the insurance company. On the contrary, another clause provides how the information was to be given to the defendant of the amount of the shipment—"risks applicable hereto to be reported to this company for indorsement on the policy as soon as known to the assured." It was the duty of the plaintiffs under this clause to report to the defendant the amount of the shipment as soon as the fact was made "known" to them, by whatever method the information was obtained. They were not to be at liberty to await advices from their agent, provided the fact came to their knowledge earlier and through a different channel. The clause requiring advices from the agent was doubtless intended in some degree for the benefit of the insurance company, to enable it to guard against fraud or mistake as to the fact, date, and amount of the shipment. It was apparently inserted for the purpose of affording evidence on these points in case a controversy should arise, either before or after the indorsement, as to the fact, date, or amount of the shipment.

But it was not a condition precedent without the performance of which the plaintiffs could in no event nor under any circumstances become entitled to the indorsement. If it had been so intended, the policy would have provided that the advices or duplicates thereof should be forwarded or delivered to the underwriter, and that the indorsement should correspond with the advices. But so far from this, the policy fails to provide that the advices were even to be shown to the defendant prior to the indorsement; but requires the plaintiffs to report the shipment for indorsement " as soon as known" to them, omitting any reference to the advices as the source of the information. If the forwarding of the advices by the agent is to be deemed an express warranty on the part of the assured, as contended by the defendant, then it must have been strictly and even literally performed, before the right to demand the indorsement accrued. Even an overwhelming necessity, an accident against which no degree of vigilance could have guarded, a force which was irresistible, would not have excused its performance. In *Pawson* v. *Watson,* Cowp. 785, Lord Mansfield says: " A warranty must be strictly performed; nothing tantamount will do." In *Blackhurst* v. *Cockell,* 3 Term. 360, Mr. Justice Buller said: "It is a matter of indifference whether the thing warranted be material or not; but it must be literally complied with." In *De Hahn* v. *Hartley,* 1 Term. 343, Mr. Justice Ashhurst said: "The very meaning of a warranty is, to preclude all question whether it has been *substantially* complied with; it must be literally." In *Newcastle Fire Insurance Company* v. *Macmorran,* 3 Dow. Parl. Cas. 255, Lord Eldon said: "When a thing is warranted, it must be exactly what it is stated to be." See, also, Phillips on Insurance, Sec. 3762. It is clear, therefore, that if the provision under discussion is to be deemed an express warranty, it must have been strictly performed, to entitle the plaintiffs to an indorsement of the ten thousand dollars on the policy. Treated

in that light, they would not have been entitled to the indorsement, even though the treasure had been shipped by the agent in the most formal manner at Mazatlan, but before preparing his advices he had suddenly died or been disabled; nor even though some other person, having knowledge of the fact, had sent the advices of his own accord. In the case supposed, if the treasure had arrived safely at its destination, the defendant, on this theory, would not have been entitled to demand the premium on it, nor the plaintiffs to recover its value, if it had been lost. In other words, it would not have been protected by the policy, as the risk had never attached. Construing the whole policy, according to what we think was the intention and understanding of the parties, and considering the nature of the transactions to which the policy related, we are satisfied it was not contemplated that the forwarding of advices by the agent should be deemed a condition precedent, without a strict performance of which a right to demand an indorsement by the one party, or the payment of premiums by the other, would not accrue.

The only remaining point made by the defendant is, that the loss having already occurred, and become known to the parties before the indorsement was demanded, the defendant was under no obligation to assume a loss which was known to have already happened. If this theory be correct, the plaintiffs were under no obligation to report for indorsement shipments which had already arrived safely, nor to pay the premiums thereon. Such a construction would practically nullify the policy in respect to shipments from the Mexican ports named therein. The agreed statement shows that the usual and most expeditious method of forwarding advices from those ports was by the steamer on which the treasure was shipped; and if the plaintiffs were not bound to report for indorsement, nor to pay premiums on shipments which had already arrived, nor the defendant to pay

losses known to have occurred before the indorsement was demanded, it results that the policy was a nullity in respect to shipments from these ports, and imposed no obligation on either party. But the parties have themselves interpreted the contract in this respect. The agreed statement shows that it was the practice of the plaintiffs to pay, and of the defendant to receive, premiums on shipments which had already arrived, and it ought not now to be permitted to escape liability for a loss, on the ground that the loss was known to have occurred before the indorsement was demanded.

Judgment reversed, and cause remanded, with an order to the Court below to enter a judgment for the plaintiffs on the agreed statement of facts.

Mr. Justice BELCHER did not express an opinion.