RANKIN et al. v. AMAZON INSURANCE COMPANY.[*]

No. 12,807; December 13, 1890.

25 Pac. 260.

**Fire Insurance—Survey of Premises.**—Where a fire insurance policy refers to a survey of the insured premises and the application as a warranty on the part of the insured, the right of the company to rely on such application and survey is not defeated by the fact that they were not furnished until after the policy was delivered, and that they were written on blanks prepared for the use of another insurance company.

**Fire Insurance—Keeping Watchman.**—In an action on a policy, evidence that the insured premises were idle for two months, during which time the insured employed only one watchman, who habitually slept in a building three hundred feet away, with the approval of the insured, shows a failure on the part of the insured to comply with a condition of the policy requiring him to employ a watchman "to be in and about the premises by day and night" during the time that they are idle, and not merely negligence on the part of the watchman in performing his duty, and is a good defense to the action.

APPEAL from Superior Court, City and County of San Francisco; John W. Armstrong, Judge.

Action by Ira P. Rankin and others against the Amazon Insurance Company on a fire insurance policy. From a judgment for plaintiffs, defendant appeals.

T. C. Van Ness and Haggin, Van Ness & Dibble for appellant; Doyle, Galpin & Scripture (Philip G. Galpin of counsel) for respondents.

FOX, J.—1. The policy of insurance upon which this action was brought was applied for November 21, 1884, and

---

*For subsequent opinion in bank, see 89 Cal. 203, 23 Am. St. Rep. 460, 26 Pac. 872.

was written up assuming the risk from 12 o'clock noon on that day, for the term of one year, but was countersigned by the general agents at San Francisco, November 24, 1884, and presumably was not delivered until that day.   When delivered a part of the written portion thereof was on a rider attached and properly authenticated, the blank being insufficient to furnish room for all the written portion.   On that rider, and as a portion of the written part of the policy, was the following: "Reference is hereby made to a survey and diagram, on file in the office of J. C. Mitchell & Son, which is made a part of this policy, and a warranty on the part of the assured."   The court below evidently concluded, and in that conclusion we concur, that in fact there was no survey and diagram on file in the office of Mitchell & Son, either on the 21st or the 24th of November.   But the uncontradicted evidence is that Mitchell & Son were the insurance brokers who acted for and on behalf of the assured in getting the insurance, and that they promised that such a survey and diagram should be prepared, and a copy thereof furnished the insurers.   Such a survey and diagram was prepared by the engineer of the Owens River Mining and Smelting Company, owners of the property covered by the insurance, and was on file in the office of Mitchell & Son, on the fourth day of December, 1884; but the evidence still leaves it uncertain whether it was so on file on the third day of December, 1884, at which time the policy was taken to the office of the insurers, and the written portion thereof rewritten upon another rider, which was duly authenticated and attached, increasing the amount of insurance allowed by $600, and winding up with the same expression as before: "Reference is hereby made to a survey and diagram on file in the office of J. C. Mitchell & Son, which is made a part of this policy, and a warranty on the part of the assured."   At some time, but at what precise time does not appear, a copy of this survey and diagram, dated December 4, 1884, the survey constituting a voluminous document consisting of questions and answers, and written upon a blank prepared for the use of another insurance company, and not of this defendant, was presented to and filed with the agents of defendant, as and for a copy of the survey and diagram, and as and for the application, referred to in the written portion of the policy, which the

brokers had agreed to furnish. This document was offered in evidence. It was signed "Owens River Mg. and S. Co., by Hoyt & Son, Applicants." The policy ran to the Owens River Mining and Smelting Company, "loss, if any, payable to Rankin, Brayton & Co." To this evidence "plaintiffs objected, upon the ground that at the time when the papers were presented to the company the insurance had already been effected, and the rights of Rankin, Brayton & Co. had vested; and upon the further ground that there was no authority upon the part of Hoyt & Son to make any contract on behalf of the Owens River Smelting and Mining Company; and upon the further ground that the paper was dated December 4th, and was made the day after the policy was made, according to the date of the last rider in the policy." This objection was sustained, to which ruling the defendant excepted, and it is now assigned as error. The question as to the authority of Hoyt & Son was unimportant. This policy, though taken in the name of the mining and smelting company, was for the immediate benefit of these plaintiffs, and the policy on its face was made, "loss, if any, payable" to them. The authority of Mitchell & Son to effect the insurance for them was amply proved, and uncontradicted. It is also uncontradicted that they promised to procure and place on file the survey and diagram. The only question is whether the fact that it was not on file when the policy was delivered defeats the right of the defendant to rely upon it, and introduce it in evidence as a part of the contract. If this question depended solely upon the clause of the policy written upon the riders, and hereinabove quoted, the right of defendant to rely upon the diagram and survey as a part of the contract of insurance, and introduce it in evidence as such, might be seriously questioned, and there are several authorities which might be cited in support of the negative of that proposition, some of which are more directly in point than Caldwell v. Center, 30 Cal. 543, cited and relied upon by respondents. But appellant does not rest its right either solely or mainly upon that clause. There is in the policy another clause which provides: "For further particulars reference is made to an application and survey No. ——,

furnished by and a warranty on the part of the assured, which is hereby made a part of this policy.'' Mitchell testifies that when he procured the policy he promised to procure and furnish such an application and survey, and that he did procure and furnish this one in compliance with that promise. and it is uncontradicted that he did so, and that this was the only one furnished. The contract was to be in two parts, as all these contracts are, each dependent upon the other. One of the parts was finished at one time, and in this instance, either the other was finished at another time or has never been finished. If finished, they constitute one contract; if never finished, there was never any contract. This paper, which was furnished by the agent of the insured in pursuance of his promise, answers the calls of the other part of the contract, is in the form of an application and survey, accompanied by a diagram illustrating the survey, and furnishes the ordinary information upon which the insurer's part of such a contract is usually based. It was furnished and accepted as the basis of the insurers' part of the contract in this case. That the delivery did not occur at the same time, and that it was written upon a blank prepared for the use of another corporation, makes it none the less a part of the contract upon which this action is brought, and as such it was error to refuse to admit it in evidence. The fact that it was not made at or before the execution of the policy may have deprived it of the quality of an express warranty by operation of law, under section 2605 of the Civil Code, but it still operates as evidence of representations made as inducement for the issuance of this policy (Civ. Code, secs. 2571–2577), and as such it was proper matter to submit to the jury. Whether warranty by operation of law or not, it was declared such upon the face of the contract, and unless unlawful the court has no power to eliminate it from the contract. In either event, whether warranty or mere representations, the defendant was entitled to have it go to the jury; particularly so since, even if mere representation, and found to be false in a material point, it gave the injured party a right to rescind the contract (Id., sec. 2580) at any time previous to the commencement of the action (Id., sec. 2583), and it

was admitted that, before the commencement of the action, the defendant had tendered a return of the premium, and notified the parties that the policy was canceled.

2. The next point urged by appellant is that the court erred in refusing to give an instruction asked by appellant, and in giving the instruction which it did give, in reference to what is called the ''watchman clause'' of the policy. The policy, as originally written or printed, contained this clause: ''It is understood and agreed that, during such time as the above mill is idle, a watchman shall be employed by the insured to be in and upon the premises day and night.'' This clause was changed at the instance of the insured, by striking out the word ''upon,'' and inserting in lieu thereof the word ''about.'' The clause as thus framed and accepted was an express promissory warranty on the part of the insured, and that it was made and accepted with full notice, and not merely an oversight on their part, is evidenced by the fact that the change was made at their instance. The question for the jury to determine was whether or not this promissory warranty was kept on the part of the insured. Exception is taken to the refusal of the court to give each of three separate instructions asked by appellant, but only one of these exceptions is urged in argument in this court—the first. We think that instruction, as written, was correctly refused, not because it did not correctly state the law as applicable to such contracts, but because it not only stated the substance of certain evidence, but undertook to state the effect of the whole evidence tending to prove whether or not the contract had been complied with in that regard. In the instruction which the court did give, it correctly declared that the clause of the policy above quoted was a warranty that the insured would employ a watchman to be in and about the premises day and night, when the mill was idle, and that if they had failed to do so they could not recover. Neither do we think the court erred in what is subsequently said on the subject of the effect of an omission of the watchman to do his duty by negligence. That portion of the instruction is in harmony with section 2629, Civil Code, and the authorities cited in Deering's note to that section.

3. The verdict is not supported by the evidence, and is against the law as laid down by the court in its instructions,

and as established by the authorities. Insurance contracts, like others, must be enforced according to the intention of the parties: Wells v. Insurance Co., 44 Cal. 406, 407. There is no ambiguity about this contract in this particular. The insured covenanted to employ a watchman to be in and about the premises day and night, during such time as the mill was idle. There is no dispute in the evidence touching these facts: That for two months before this fire occurred the mill was idle; that the mill, "frame buildings, adjoining and communicating," with the machinery and property therein, was the immediate subject of the insurance; that during the two months the mill had so remained idle, up to and at the time of the fire, but one person had been or was employed as watchman; that he had no special instructions as to watching, either day or night; that as a matter of fact he did not watch the whole of any night, but habitually, and with the knowledge and approval of the superintendent, slept at night in a building three hundred or four hundred feet away from the mill, and was sleeping there when the fire occurred. This building was situated upon land belonging to, or in possession of, the mining and smelting company, but it would do violence to common sense to hold that it was "in" or "about" the insured property, or that a man who habitually and nightly slept in it was, while sleeping there, a watchman in or about the insured property three hundred or four hundred feet away. And if, as shown without contradiction, he habitually and nightly slept there, with the knowledge and approval of his employer, it is too much to say that he was a watchman employed to be in or about the insured premises during the night-time. An employment which knowingly and habitually suffers such a course of procedure is not such an employment as is demanded by the terms of this contract. These facts do not show mere negligence in the performance of duty, but rather failure to employ for such performance. The evidence of a failure to comply with the conditions of this clause of the policy is much stronger than it was in the case of Trojan Min. Co. v. Fireman's Ins. Co., 67 Cal. 27, 7 Pac. 4, and there it was held that recovery could not be had because of such failure. The facts here disclosed justify and call for the adoption and repetition of the language used in Wenzel v. Insurance Co., 67 Cal. 440, 7 Pac. 817: "It is ap-

parent from the uncontradicted evidence in the case that Lynch [McMurray] was not employed as a watchman of the premises, within the sense and meaning of the contract." There is nothing in Sierra etc. Min. Co. v. Hartford Fire Ins. Co., 76 Cal. 236, 18 Pac. 267, cited by respondent, in conflict with this view. Judgment and order reversed and cause remanded.

We concur: McFarland, J.; Sharpstein, J.; Paterson, J.

I concur in the judgment: Thornton, J.